May it please the Court, my name is Richard Stevens for Appellate Flower World. I'd like to reserve five minutes for a bubble. Please watch the clock. Thank you. So we've come to court believing that Flower World was cited for specific violations of law that is asserted by the Department of Labor and Industries in the proclamation. In the briefing, the L&I officials are arguing that Flower World was only cited for violating the General Duty Clause. And we've argued a fair amount about the General Duty Clause not being available when there are specific requirements in the labor code. Could I interrupt you for a moment? I have a threshold question. So even if we assumed that you were cited for violating a standard, you would have to show that OSHA preempted that standard. And we have the Supreme Court case of NFIB v. OSHA saying that OSHA has no authority to impose a standard for COVID-19 in the workplace unless the danger differs in both degree and kind from the everyday risk of contracting COVID. So it seems like OSHA would have no authority to implement and enforce a general COVID standard. So how could there ever be preemption of whatever Washington State imposes? Can you address that? Absolutely, Your Honor. So the NFIB case is really about OSHA not being able to require widespread vaccination mandates. And because COVID is a disease that affects the general population as well. But in this particular case, OSHA has regulations that are not about vaccines, but about airborne diseases, airborne pathogens. Just to make sure, you would ask us to read NFIB v. OSHA narrowly as applying only to vaccine mandates. And I'm asking that because the language of the case talks about we're not going to allow OSHA to regulate the hazards of daily life and that COVID-19 is one of those hazards. So it seemed a little bit broader than that. But your view is we should see it as limited only to vaccines. Yes. And here is perhaps a reason why there are states that don't have their own program. And so they are governed completely by OSHA regulations. And I think it is fair for that in those states to look at the OSHA regulation of airborne pathogens, that we're arguing is what is preempting here, as being applicable in those areas. And because I don't think the court is saying nothing that could possibly reduce COVID risks is within OSHA's jurisdiction. Just not a widespread kind of issue like the vaccine mandate. And is there any language that you would point me to in the opinion that would support that interpretation? Well, not specifically, Your Honor. But again, the result would be if you're in Illinois where there is no workplace safety standards, that are approved by OSHA, and no OSHA regulation applies, then nothing applies for COVID. So you don't think the state could exercise its police powers to make general rules for closing business, for wearing masks, shutting down businesses, as I know that was certainly the case in California where I'm from. But you don't think Illinois would have the police power to do that? Well, they may have the police power, but when it's specific to workplace safety. So the governor couldn't shut down workplaces as they did in California. I mean, the governor exercised emergency powers in California to take over most of the economy. So I guess I'm wondering why you think that couldn't happen in Illinois. Well, I think that it is different because we're talking about, we're not talking about just closing down businesses. We're talking about specific safety standards in the operation of the business. And so I understand that is a concern about closing down businesses. But it's not raised by the facts of this case. What's raised by the facts of this case is a flower world was cited for operating its business in a way that did not comply with the governor's proclamations. And those specific requirements, we contend, should have been submitted to OSHA for approval. That's a completely different thing than than shutting down a business entirely, which is not. I thought your argument was that the Supreme Court couldn't have meant that OSHA was without authority to regulate COVID in the workplace, because that would mean no one could. And obviously, as we have in Washington, somebody could, the governor issued a proclamation and the Department of Labor and Industries controlled it. So why couldn't the Supreme Court have meant what the language of the case seems to say, which is OSHA is without authority to regulate the hazards of daily life, including COVID risks? Because that there are regulations on their current OSHA regulations on airborne pathogens. And I don't see the Supreme Court in the NFIB case saying that those regulations are out the window. So sorry, those regulations do not deal with the scope of something that would be a pandemic. Well, Your Honor, there isn't any. You're talking about airborne pathogens in a specific context. You're not talking about airborne pathogens in the context of what we're talking about here. Well, that's right. This is a different pathogen than existed five years ago, for instance. That's true. It's not that it's a different pathogen. It's a different scope in terms of the pervasiveness of the general public health emergency, as opposed to airborne pathogens that might exist in a hospital emergency room or in some other context. Right? So this is a different pathogen than existed five years ago, for instance. So this, as the Supreme Court said, where the virus poses a special danger because of the particular features of an employee's job or workplace, targeted regulations are plainly permissible. We do not doubt, for example, that OSHA could regulate researchers who work with the COVID-19 virus. Are there any particular features of the flower world's job or workplace that's analogous to researchers working with the COVID-19 virus? Well, Your Honor, I wouldn't think so. I mean, this language suggests that we should, as Judge Fragerson said, that we should best interpret OSHA's existing regulations as applying only to specific dangers, specific to services. And that's a very different approach to certain workplaces, as opposed to a general work-wide concern. That seems to be the thrust of the Supreme Court's opinion. I think the problem, Your Honor, with that interpretation is if you're going to look at particular pathogens, this one versus, you know, we're going to look at asbestos or some other chemical, there are times when OSHA does look at them specifically, and then they look at them in a different way. But it has general regulations covering, you know, requiring certain respirators or masks and those types of things. And those regulations apply, and my client needs to know which ones apply. That is the reason that we're here, is... Absent the Washington standard, do any of those OSHA regulations apply to your workplace? So were you complying with those OSHA regulations before you got the citation or the proclamation came out? Yes, Your Honor. I mean, there hasn't been any allegation that we've... that my client has not complied with OSHA regulations. Well, interpreting those as applying to COVID, I assume that you were requiring respirators and the like, if you think those regulations apply to COVID. Or was your client doing that? So the OSHA regulations on respirators give the employer the responsibility for determining in which situations employees need to be wearing respirators and when not. And so that there is more flexibility for the employer in the OSHA regulations. And what is it... so this is 1910.134, I take it, right? What is it in the language of that regulation that you would point to, to support the view that that is a federal standard that addresses... I mean, the Supreme Court's language is that, you know, the scope of preemption is, you know, an occupational safety or health issue, with respect to which a federal standard has been promulgated. So what would you point to in that regulation that shows that it addresses the issue of infectious diseases spreading in the population at large and including from one employee to another at a workplace? Well, one, it's in the list of standards in the code. It's part of the grouping of standards. And as it relates to this particular issue is that there's details on when to require masks, when not to require masks and respirators and the like. Right, right. But I mean, I guess, I mean, it may... it requires wearing masks in some situations. But that doesn't answer the question of whether it addresses this occupational safety or health issue. Because as I read the regulation, it's about masks aimed at protecting workers from sort of inorganic or dust or vapors or things produced by the workplace, not things spreading from person to person among employees, just as they spread in the general population. So what is it there that addresses the issue of pandemic infectious disease? Well, the only thing I can think of right now is that the state adoption of its requirements are very clear that are approved by OSHA that talk about biological agents. I think that is cited in our brief, that they treat the biological agents as the same. Is COVID listed by name? No, it is not. But that's I mean, isn't that about new biological? Like if you're in a biological lab, right, and you're working with biological agents, then you have to be protected from it. Or if you're in a hospital, but that's flower world is not like that, right? The state rule that we're talking about here is the danger that customers or employees will spread the disease to each other. That seems like a different kind of issue that potentially calls for different kinds of precautions and not one that, you know, 1910.134, you know, when it was adopted many years ago, it was aimed at. Well, one of the inherent questions in this case is when the Supreme Court in Gade talked about an issue, what exactly it was referring to. Was it referring to the standard or was it referring to the disease or the occupational hazard? And then how specific does it have to be? I mean, that's kind of the import of your question. Is a biological hazard a broad enough issue to include COVID-19? I see you're running out of time. Do you want to save the remainder? Yes, thank you. I'm Anastasia Sandstrom, assistant attorney general, and I represent the director of the Department of Labor and Industries for the state of Washington. Protecting workers, the Washington State Department of Labor and Industries issued a general duty citation to Flower World for failing to protect its workers from the hazard of COVID-19. There is no preemption for two reasons. First, there needs to be a showing of a federal OSHA standard, and there is none. And second, there needs to be a showing of a state-specific standard that was cited under that needed to be submitted to OSHA for approval. I want to start with talking about the OSHA standard. The National Federation case... I'm sorry to interrupt, but before you get further into the merits, could you address the... You've made an argument that the case is not ripe, and I wanted to be sure I understood that. Because we have a citation that LNI issued that imposes a fine that specifically refers to the governor's proclamation. So why is there not a ripe dispute as to the validity of the proclamation? The complaint made two allegations, or two requests for relief. One, to invalidate the proclamation on the grounds of preemption, and the other to invalidate the Washington administrative code for the general duty that was the source of the claim. With respect to the proclamation, it has not been enforced. The only enforcement mechanism for the proclamation is as a gross misdemeanor by law enforcement, or perhaps a governor injunctive relief. And so that has not been enforced, or the threat of enforcement. In fact, the sheriff for that county had a recall election because he wasn't enforcing proclamations. So there's no enforcement on that. So that isn't ripe. That's the department's contention, that that element of the complaint is not ripe. The department would concede that the question of whether the citation had a specific standard that needed to be submitted to OSHA is ripe. And so with respect to that, the general duty citation has four elements, one of which is that there has to be a recognized hazard of COVID-19. The other is that there has to be feasible means of abatement. And the department's position is that the governor's proclamation goes to proving those elements as an outsourced resource document, as argued in the briefing at the district court. And if you look at general duty citations, the department's briefing has a number of different examples where there's outsourced reference documents. So the governor's proclamation is just like a fire code or an ANSI standard. We would note that the citation itself is a little inartful on that point. But as this court in Donovan said, citations can be liberally amended. But we don't even get to the question— Does that mean that Flower World doesn't actually have to comply with the specific requirements of the proclamation if it does something else to fulfill the general duty requirements? So it doesn't have to have social distancing of six feet and mask face coverings and temperature checks? It could do something else? Because I understand the general duty clause just says you have a general duty to keep the workplace safe. Yes, Your Honor. Those are just proposed methods of creating a safe workplace. Flower World argued in their brief that they sent workers home, and they could argue at the Board of Industrial Insurance Appeals that that solved the problem and that provided a safe workplace. So just by not following the governor's proclamation, that doesn't violate WISHA. Labor and Industries has the burden of showing all four elements, and then the burden would shift to Flower World, and they would have the opportunity to say, those means were not feasible. They can attack those means and say, those aren't feasible for our workplace. And what about, let me ask you sort of the converse of that question, which is, suppose that somebody did everything that the governor said, and then LNI brought an enforcement action against them saying, actually, we think what the governor said was not very effective, and you should have done something different under the general duty. Would that be able to, that's a proceeding that could go forward, and their defense that what we complied with was not feasible? If the governor would not be an effective defense, is that right? Correct. So say the CDC had different provision than the governor. The department could say, well, these CDC provisions provide feasible means to provide a safe workplace, and they should control. And then Flower World could come back and say, oh, no, we did everything under this governor's proclamation. That was a feasible means of abatement. It equally provided, or more, or further provided a safe workplace, so therefore you can't cite us. So this note on the citation, employers must comply with all conditions for operation required by emergency proclamation. And they're saying not, the employer didn't ensure that the indentum to a governor's proclamation was met. You're saying those are just inaccurate wording. Right, inaccurate, purgatory language. I'm sorry, I interrupted you, Your Honor. No, no. I mean, it doesn't seem very, if I were reading a citation, I would assume I had to comply with the proclamation. Is there any language in the citation that would provide this, your interpretation, or would give a clue to the employer that that was your interpretation? Yes, Your Honor, for two reasons. First, the citation starts off with violation one, item one. Immediately under it, it cites the regulation that they're cited under. Immediately under that, it provides the language that that wasn't done. That regulation was also done in the summary invoice, so the person would... So the cite to the regulation itself, you think, is sufficient, even though it goes on to say you have to do the specific things in the proclamation. Correct. That's what they're being cited for, the regulation. And at the Board of Industrial Insurance Appeals, what the question will be before the Board is, did they violate that regulation? And the Department, if it has inartful language in the citation, can amend it liberally, as this Court in Donovan said. So to the extent that there could be something that's unnecessary in that, that can be changed. And this really points out that this is a state law question. Whether there's a valid general duty citation before the state court. Because we don't even get to whether it's a specific standard, because there's no standard under OSHA. The National Federation case, although I think this is unfortunate for workplace safety, does say that something like COVID-19 regulations don't apply to the general presence of COVID. It's only if there's a specific harm that's in the workplace. And certainly Flower World has conceded that they don't have that specific harm. But if the Court accepts Flower World's argument that that case doesn't apply, that you shouldn't follow the United States Supreme Court, then there isn't a regulation that governs all of COVID-19 in a pandemic under OSHA. And we know this because OSHA has said that. OSHA does cite under its respiratory regulation for COVID-19, but it only does it in a specific circumstance. And that's to protect against sprays coming on people like healthcare workers where they can get COVID-19. But it said for source control, which is the use of cloth masks and social distancing, which is to stop you from spreading it to other people. So on page 41 and 42 of the excerpts of record of documents that Flower World provided, and page 61 of documents that Flower World provided, OSHA states that they will cite under the general duty doctrine for COVID-19 for this issue of source control. The first line of defense is social distancing, as that's a feasible means. But if social distancing isn't feasible, then you could point to the fact that you had your employees wear cloth masks. So this is OSHA that you should defer to. They're relying on OSHA. They're pointing to OSHA and saying there's a standard. There is not a standard. So that's the first element that they have not proven. And so this court need go no further than that with respect to the second element of the complaint with respect to the regulation and with respect to the citation under it. It can also apply that and not go to that for the governor's proclamation, though this court on jurisdictional reasons did not reach the governor's proclamation as well. Is the governor's proclamation entitled to any sort of deference in an enforcement proceeding? The governor's proclamation says this. The CDC says this. Something I found in a book about how to have a safe workplace says some other thing. Are they all the same, or does the governor's proclamation have any special status? Well, under the general duty clause, the department's obligated to show there's a recognized hazard of something and that there's a feasible means to abate it. So they could have pointed to the CDC as that, Centers for Disease Control Information, but they use the governor's proclamation to show that. So it's a reference document. It's like the Hertz case. So your answer is no, it doesn't have any special legal significance. It's just the adjudicator can just decide that it's persuasive as evidence of what a person ought to do or that it's not? Yes. In the WISHA setting, general duty, as the federal courts have used it, it's a proposed means. And so it's something the adjudicator could say, no, we're not going to follow that. What do we do with, I guess, the opposing counsel cited 296-800-14035 that was issued in 2019 saying that where businesses, it seems to give effect to emergency proclamations where a business activity is prohibited by an emergency proclamation. Employers shall not allow employees to perform work and employers must comply with all conditions for operation required by emergency proclamations. What's the effect of that? Two things, Your Honor. First, that's a specific regulation that adopted by reference to governor's proclamation. The department did not use it for face masks and social distancing. At the time it was citing Flower World, it used it for shutting down businesses. But it's a specific standard, and if it should have been cited, then Flower World could have used it. And Flower World can argue at the Board of Industrial Insurance Appeals. It can argue there's no general duty citation, it's not valid, because there's a specific standard. But in their complaint, they did not raise a state law claim. But in response to Judge Miller's question about what's the effect of the emergency proclamation, doesn't that section suggest it does have some legal effect? Well, in the context of proceeding under that regulation, yes. Only insofar as instead of copying and pasting the proclamation's requirements into the regulation, the department incorporated it by reference. And it does this for all sorts of regulations, like there's national traffic safety codes that are incorporated by reference. There's national ANSI codes about construction stancers that are incorporated by reference. So it's a method of saving drafting time by not copying and pasting in it. But this regulation doesn't matter here, because they didn't say in their complaint, oh, there's some sort of preemption because this regulation was not submitted to OSHA. The department submits its regulations to OSHA. There's no allegation that that wasn't submitted to OSHA. And so if the department should have cited under it, then the only consequence for Flower World is they can argue at the Board of Industrial Insurance Appeals, there's a specific regulation that's in effect. It was improper for you to cite the general duty doctrine, and that's a defense to the department's citation. But that's only relevant to the board proceedings. Under this court's case law, two things would have to be met. First, they would have had to argue that regulation in their complaint and state supplementary jurisdiction on a state law claim. And second, under this court's decisions and cited in the department's brief, they would have had to exhaust their remedies by going to the board first. And they did neither. The department requests that this court affirm the district court's decision that Flower World did not present any basis for relief under its complaint, if there's no further questions. Thank you. We'll give you a minute for rebuttal. Thank you, and I think I just want to address two things. One, the issue about the challenge to the proclamation as not being ripe. If you look at Proclamation 2057-1, at the very end it says that violators may be subject to criminal penalties and goes on to say enforcement by the Department of Labor and Industries, Division of Occupational Health and Safety. I mean, the enforcement by the proclamation in its own terms says it can be exactly how it was being enforced against Flower World. So we believe that that issue is ripe. Just to clarify the significance of the newer regulation that adopts the governor's proclamations that Judge Okuda mentioned, we offer that only to show that the citation should not be read merely as a general duty clause violation. Because there is a specific requirement, and everybody agrees that if there is a specific requirement, you can't cite people under the general duty clause. So the proclamation in the citation must have meant something. And we agree that we can defend our general duty clause based on this new stat, this new code. But that is why we believe the proclamation, and why we bothered coming to court, is we believe the proclamation was being enforced against us. All right. Let me thank both sides for their argument. The case of Flower World, Inc. v. Joel Sachs is submitted, and we're adjourned for the session and for the week. Thank you.
judges: IKUTA, MILLER, Pregerson